UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| IAN L. RAWLS, )<br>          Plaintiff, )<br>  )<br>     v. )<br>  )<br>LAPORTE COUNTY SHERIFF'S )<br>DEPARTMENT, *et al.*, )<br>          Defendants. ) | CAUSE NO.: 4:19-CV-3-JVB-JEM |

## OPINION AND ORDER

This matter is before the Court on Defendant Advanced Correctional Healthcare, Inc.'s Motion for Summary Judgment [DE 78] and Defendant Laporte County Sheriff's Department's Motion for Summary Judgment [DE 80], both filed August 31, 2020, and Defendants' Joint Motion to Strike Plaintiff's Sur-Reply [DE 91], filed November 11, 2020. For the reasons described below, the motion to strike is denied and the motions for summary judgment are granted.

## PROCEDURAL HISTORY

Plaintiff Ian L. Rawls, a prisoner without a lawyer, sued the LaPorte County Sheriff's Department and Advance Correctional Healthcare ("ACH") arguing that they maintain a policy or practice of ignoring requests for medical attention, resulting in a lack of treatment for his finger injury in violation of the Fourteenth Amendment.[1] *See* February 25, 2020 Screening Order [DE 7]. Defendants filed motions for summary judgment, arguing that the record contains no evidence

---

[1] At screening, the Court allowed Rawls to proceed on a Fourteenth Amendment claim based on the allegation in the complaint that he was a pretrial detainee, and the parties briefed the summary judgment motions based on this understanding. By contrast, the summary judgment record indicates that Rawls was serving a criminal sentence during most of the relevant period of time and that an analysis under the Eighth Amendment might also be appropriate. *See* ACH Mot. Ex. G [DE 79-14] at 26-27. For the sake of consistency and because applying the Eighth Amendment would not change the outcome, the Court will analyze the claims under the Fourteenth Amendment.

to suggest that the treatment of the finger injury amounted to a constitutional violation or that Defendants maintained a policy or custom that led to such a violation.

After these motions were fully briefed, Rawls filed a sur-reply without leave of court, and Defendants filed a motion to strike it as unauthorized. To Defendants' point, "[t]he court generally does not permit litigants to file a sur-reply brief." *Savage v. Finney*, 2011 WL 3880429, at *1 (N.D. Ind. 2011). Nevertheless, the Court declines to strike the sur-reply because it is unclear how it prejudices Defendants. *See Tektel, Inc. v. Maier*, 813 F. Supp. 1331, 1334 (N.D. Ill. 1992) ("Motions to strike under Federal Rule 12(f) are not favored, and are usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial.").

## MATERIAL FACTS

Advance Correctional Healthcare provides medical care to inmates at the LaPorte County Jail. ACH Mot. Ex. A, Affidavit of Michael Person [DE 79-1] at ¶ 2. At the jail, inmates submit requests for medical care and communicate with medical staff through an electronic kiosk system. *Id*. at ¶ 5. At all relevant times, Michael Person, M.D., served as the jail physician by examining inmates one day per week and remaining on call to be reached by nurses. *Id.* at ¶ 3-4. If he was not available, another physician employed by Advance Correctional Healthcare would fill in. *Id.*

On December 31, 2017, before entering the jail, Rawls dislocated the ring finger of his right hand. Mot. Ex. E [DE 79-12] at 8-10. A doctor at the Lakeshore Bone and Joint Institute prescribed him pain medication and advised him to use a cast and to elevate and ice his injury. *Id.* On March 6, 2018, Rawls was arrested and reinjured the finger. Plaintiff's Sur-Reply [DE 89] at 2-3. He asked for medical care, and LaPorte County Sheriff's Deputy Austin Wells told him to ask medical staff when he arrived at the LaPorte County Jail. *Id.* From March 7 to March 12, he

remained under medical observation at the jail for other injuries, and again asked to see a doctor about the injured finger. A nurse told Rawls she would request to have him see a doctor. *Id.*

Over the proceeding months, Rawls made numerous requests for medical care for a variety of complaints. On March 17, Rawls submitted a request to correctional staff through the kiosk seeking a dietary accommodation for his allergies. ACH Mot. Ex. G [DE 79-14] at 6-7. In response, he was told to submit a medical request. *Id.* On May 15, Rawls submitted a medical request through the kiosk seeking an assessment as to whether he had diabetes. *Id.* at 12-13. On May 23, a nurse examined him and planned to check his blood sugar during the next three weeks. ACH Mot. Ex. B, LaPorte County Jail Medical Records [DE 79-2] at 44. On June 27, Rawls submitted a medical request through the kiosk reporting bloody urine. ACH Mot. Ex. G [DE 79-14] at 22-23. On June 29, a nurse conducted a urinalysis, and Dr. Person prescribed antibiotics. ACH Mot. Ex. B [DE 79-2] at 49-51.

On July 24, Rawls submitted a medical request reporting that he had continued to suffer bloody urine. ACH Mot. Ex. G [DE 79-14] at 30-31. On July 25, a nurse conducted another urinalysis, and Dr. Person prescribed more antibiotics. Person Aff. [DE 79-1] at ¶ 8; ACH Mot. Ex. B [DE 79-2] at 99. Rawls also told the nurse about his finger injury.[2] *Id.* She found no objective signs of distress and an active range of motion in all fingers. *Id.* She conveyed this information to Dr. Person, who decided to take no action, reasoning that it was an old injury without new symptoms and that Rawls could seek further medical care following his release from jail in March 2019. *Id.* In August, Rawls submitted a medical request for an extra blanket and hair removal

---

[2] Defendants maintain that Rawls complained about an injury to his left thumb during this visit, while Rawls asserts that he complained about the original injury to his right ring finger. Because Rawls is the non-movant, the Court construes this dispute in his favor and assume that he complained about his right ring finger.

3

cream, but medical staff denied these requests because they did not provide these types of items to inmates. ACH Mot. Ex. G [DE 79-14] at 34-39.

On September 24, Rawls submitted a medical request for an extra blanket and care for his injured finger, and medical staff responded that he was scheduled for an appointment. *Id.* at 50. On October 17, Rawls submitted a medical request for care for his injured finger and received a similar response. *Id.* at 55. On October 22, Rawls submitted a medical request reporting ankle pain. *Id.* at 56. On October 23, a nurse examined the ankle, and Dr. Person recommended ice and elevation as necessary. ACH Mot. Ex. B [DE 79-2] at 8. On October 26, Rawls submitted a medical request seeking care for his ankle and finger, and medical staff advised that an X-ray was ordered. ACH Mot. Ex. G [DE 79-14] at 58. On October 30, Dr. Person was told that an X-ray of the ankle revealed no abnormalities.[3] Person Aff. [DE 79-1] at ¶ 9. Based on this information, he ordered no treatment, and Rawls submitted no further medical requests regarding his ankle. *Id.*

On November 7, 2018, Rawls submitted a medical request seeking care for his injured finger. ACH Mot. Ex. G [DE 79-14] at 63. On November 13, a nurse responded that a doctor had already addressed his concern, and Rawls denied that the doctor had examined him. *Id.* On November 14, Rawls submitted a medical request for increased dosage of his antipsychotic medication. *Id.* at 68. On November 16, Dr. Person examined the finger and observed no swelling or objective signs of pain as Rawls moved it. ACH Mot. Ex. B [DE 79-2] at 69. Dr. Person advised Rawls to seek further treatment for the finger upon his release from jail. *Id.*

On November 28, Rawls submitted a medical request reporting bloody urine. ACH Mot. Ex. G [DE 79-14] at 74. On November 28, he refused his medical appointment. ACH Mot. Ex. B

---

[3] Medical records confirm these X-ray results. ACH Mot. Ex. B [DE 79-2] at 69. While Rawls denies that an X-ray was taken, he does not explain the presence of the X-ray results in his medical records, nor does he dispute that this information, whether erroneous or not, was documented in his medical records and conveyed to Dr. Person.

4

[DE 79-2] at 72. On December 5, Rawls submitted another medical request reporting bloody urine. ACH Mot. Ex. G [DE 79-14] at 79. On December 7, Dr. Person ordered a urinalysis and advised Rawls to increase his fluid intake. ACH Mot. Ex. B [DE 79-2] at 76. On January 3, 2019, Rawls reported that he had hemorrhoids at sick call, and a nurse gave him hemorrhoid cream, advised him to improve his diet and fluid intake, and to follow up if his condition did not improve. *Id.* at 82. On January 8, 2019, Rawls submitted a medical request for Tylenol for his finger pain, and he was told that Tylenol was available at the commissary. ACH Mot. Ex. G [DE 79-14] at 87.

On January 9, Rawls submitted a medical request for a change his in psychiatric medication. *Id.* at 88. On January 18, Dr. Person noted that Rawls had refused to take Prozac as prescribed and issued no new orders. ACH Mot. Ex. B [DE 79-2] at 84. On January 23, Rawls complained of pain in his jaw and back at sick call, explaining that other inmates had attacked him. *Id.* at 85-86. On January 24, Dr. Person observed that Rawls could not open his mouth and ordered Tylenol and a jaw X-ray, which revealed no fractures. *Id.* On January 31, Rawls complained of depression and back pain. *Id.* at 88. Dr. Person prescribed Zoloft and ordered a urinalysis. *Id.* On February 21, Rawls refused a medical appointment for his back. *Id.* at 92. On March 6, Rawls was released from the LaPorte County Jail. Mot. Ex. G [DE 79-14] at 26-27, 40-41.

> Dr. Person described his decision regarding treatment of the finger injury as follows:
>
> Mr. Rawls' injury to his right finger was not an acute injury, since it was so old, and it therefore did not require any additional medical treatment while at the LaPorte County Jail. Furthermore, I understand that based on Mr. Rawls' prior medical records, he was never actually diagnosed with a fractured finger on his right hand but was only diagnosed with a sprain of the finger. Even if Mr. Rawls' had fractured his ring finger it would not be medically necessary to cast such an injury as typical treatment for a ring finger fracture would be a splint. Further, it would have not been necessary to cast Mr. Rawls for a fracture to his right finger six months after the incident. The bone would already be healed by then.

Person Aff. [DE 79-1] at ¶ 14.

Rawls states that he was attempting to see a doctor for his finger injury, but was not aware that he had to file a request through the kiosk to see a doctor. Rawls states as follows:

> For several months plaintiff has verbally asked and requested to see the doctor. All the way up until [two nurses] explained to the plaintiff that the doctor would not see me unless I put a request on the jail's kiosk system. By this time it had already been five to six months.

Plaintiff's Sur-Reply [DE 89] at 3-4.

Rawls also attached an affidavit from his fellow inmate, Ronnie Bee Cislo, to his sur-reply, which states:

> I am currently an inmate at the LaPorte County Jail. I can testify that I was an inmate during 2018 while the facility was under care of Advance Correctional Healthcare. I can further testify the above defendants do maintain a practice of denying healthcare to us under certain circumstances. I was denied medical treatment for my chronic HPV. Request after request can prove they were acting deliberately indifferent to my serious medical needs as a pretrial detainee.

*Id.* at 25.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

## ANALYSIS

Rawls asserts that the LaPorte County Sheriff's Department and Advance Correctional Healthcare maintained a policy or practice of ignoring requests for medical attention, resulting in

6

a lack of treatment for his finger injury in violation of the Fourteenth Amendment. "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[P]unishment can consist of actions taken with an expressed intent to punish," or, "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

The inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps. The first step, asks whether "the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). "A showing of negligence or even gross negligence will not suffice." *Id.* The second step is to assess whether the challenged conduct was objectively reasonable, based on "the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care." *Id.*

A corporation cannot be held liable under § 1983 on a *respondeat superior* theory. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather, corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.* A corporation can be held liable for "an express policy that, when enforced, causes a constitutional deprivation." *Id.* The policy must be the "moving force behind the deprivation of his constitutional rights." *Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013). Absent an unconstitutional policy, corporate liability may be established with a showing of "a widespread practice that, although not authorized by written law or express [corporate] policy, is so permanent and well settled as to constitute a

7

custom or usage with the force of law." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). In assessing whether a practice was sufficiently widespread to impose liability, "[i]t is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020). "The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Id.*

In this case, the record lacks sufficient evidence for a reasonable jury to find that Defendants maintained a practice of ignoring inmates' medical requests that was so pervasive that it amounted to a policy decision. To start, the record reflects that Dr. Person did not ignore Rawls' requests for medical attention for his finger. Instead, the record indicates that he provided objectively reasonable medical care by considering these requests on at least two separate occasions, finding that the finger was sprained rather than fractured and required no immediate treatment, and advising Rawls to follow up with his outside medical provider after his expected release from jail. The record reflects that medical staff regularly addressed Rawls' various medical requests throughout his time at the LaPorte County Jail when he submitted them through the electronic kiosk or presented them at sick call.

Rawls contends that he did not understand that he needed to submit his medical requests through the electronic kiosk to see a doctor until nurses told him so in September 2018, and that he had verbally requested to see a doctor before then. Rawls does not explain the circumstances of these verbal requests, including to whom they were directed, the location, timing, and frequency of the requests, and what responses he received. Accepting Rawls's allegation as true, it does not follow that Defendants had a policy or practice of ignoring medical requests. During the time he

8

claims his verbal requests were ignored, the finger was examined by a nurse, and the results of that examination were presented to the doctor. Moreover, while Rawls may not have known that he was required to submit medical requests through the electronic kiosk, the record reflects that he became aware that it was an available option shortly after his arrival at the LaPorte County Jail. Rawls submitted requests through the kiosk for other medical complaints, such as his suspected diabetes. The record further indicates that the kiosk presented a consistent, effective method of obtaining medical attention or, at minimum, a response from medical staff.

Rawls contends that he eventually submitted multiple requests regarding his finger through the electronic kiosk before Dr. Person examined his finger on November 16, 2018. The record reflects that medical staff responded to each of these requests, that the examination occurred about seven weeks after the initial request, and that Dr. Person had already considered the chronic injury just a few months earlier in July 2018. Though the record does not contain a complete explanation of the delay between the initial written request in September 2018 and Dr. Person's examination in November 2018, it includes no evidence that the individual responses from medical staff amounted to reckless indifference or intentional misconduct. Further, even if the record included such evidence, a reasonable jury still could not find that Defendants maintained a widespread practice of ignoring medical requests, given the disproportionately broader pattern of responsiveness to Rawls' medical requests throughout his time at the LaPorte County Jail.

The Court has also considered the affidavit of Ronnie Bee Cislo. In this affidavit, Cislo offers to testify about how Advance Correctional Healthcare denied him medical treatment for HPV but includes no substantive information to suggest that his interactions with medical staff at the LaPorte County Jail resulted in a constitutional violation or that the denial of treatment resulted from a widespread practice of ignoring requests for medical care. Because the record lacks

9

sufficient evidence for a reasonable jury to find that Defendants maintained an express policy or a widespread practice of ignoring inmates' medical requests, the Court grants the motions for summary judgment with respect to the LaPorte County Sheriff's Department and Advance Correctional Healthcare. No other claims remain in this case.

For these reasons, the Court:

(1) **DENIES** the motion to strike [DE 91];

(2) **GRANTS** the motions for summary judgment [DE 78, 80]; and

(3) **DIRECTS** the clerk to enter judgment in the defendants' favor and to close this case.

SO ORDERED on November 24, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT